589 S.E.2d 517

**In re ERICA C., Ashley J. and Oakie Lee C.**

Nos. 31245, 31246.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 2003.

Decided Nov. 5, 2003.

Letitia Neese Chafin, Esq., The H. Truman Chafin Law Firm, PLLC, Williamson, for Phoebe C.

Diana Carter Wiedel, Esq., Williamson, for Eric C.

Darrell V. McGraw, Jr., Esq., Attorney General, Charleston, Teresa L. Brown, Esq., Assistant Attorney General, Teays, for WVDHHR.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Mingo County entered on October 28, 2002. Pursuant to that order, the circuit court terminated the parental rights of the appellants and respondents below, Eric C.[1] and Phoebe C., to their children, Erica C., Ashley J., and Oakie Lee C., and further denied the appellants post-termination visitation with their children.

In this appeal, the appellants claim that they established that there was a reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future, and therefore, the circuit court erred by terminating their parental rights. They further contend that the circuit court erred by denying them post-termination visitation with their children based upon events which occurred after the dispositional hearing but prior to entry of the dispositional order.

This Court has before it the petition for appeal, the entire record, and the briefs of counsel. For the reasons set forth below, the circuit court's final order is affirmed.

I.

FACTS

Eric C. is the biological father of Erica C., born on November 21, 2000, and the stepfather of Ashley J., born on May 1, 1995, and Oakie Lee C., born on August 11, 1996. Phoebe C. is the biological mother of all three children. The biological father of Ashley J. and Oakie Lee C. is deceased.

On June 18, 2001, the appellee and petitioner below, the West Virginia Department of Health and Human Services (hereinafter "DHHR"), sought and obtained emergency custody of the children after an incident wherein the appellants were cited for disorderly conduct and public intoxication[2] at a restaurant in Mingo County, West Virginia. At the time of the incident, Erica C. and Ashley J. were found in the appellants' car outside the restaurant next to the road. The vehicle was not running, and the windows were not rolled down. The children had been left in the vehicle at least an hour and perhaps as much as an hour and a half. Oakie Lee C. was not present. He was with his maternal aunt, Loretta C., with whom he had been residing for approximately four years.[3]

In the emergency petition, the DHHR indicated that it had first received a referral concerning the family on December 15, 2000. At that time, it was alleged that the appellants were neglecting the children and abusing controlled substances. These allegations were never substantiated, and the appellants were not cooperative. They moved several times and failed to take the requested drug screens or participate in the parenting classes offered them.

Based on the above, the children were removed from the appellants' custody and a preliminary hearing was scheduled for June 21, 2001. The preliminary hearing was con-

---

1. We follow our traditional practice in cases involving sensitive facts and use initials to identify the parties rather than their full names. *See In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. The appellants admitted that they had taken Xanax, a prescription drug.

3. Oakie Lee C. was not removed from the physical custody of Loretta C. However, the court did grant the DHHR legal custody of him.

tinued until June 28, 2001, because the appellants were not properly served with the petition for emergency custody.[4] At the time the preliminary hearing was rescheduled, physical custody of all three children was granted to Loretta C., but the DHHR retained legal custody.

At an adjudicatory hearing on July 24, 2001, the court found that the children had been neglected. The appellants were granted a 90–day post-adjudicatory improvement period. The court ordered the DHHR to provide services, including random drug and alcohol screening.

After several continuances, a dispositional hearing was held on March 26, 2002. The final dispositional order was entered on June 21, 2002. In that order, the circuit court found that the DHHR had established by clear and convincing evidence that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected. Consequently, the appellants' parental rights were terminated. However, the court indicated that this might be a case where post-termination visitation would be appropriate, especially since the children were going to be permanently placed with their maternal aunt, Loretta C. Accordingly, the court ordered that the current visitation schedule continue until further order and review by the court.

A judicial review was conducted on September 18, 2002. At that hearing, the DHHR recommended that the appellants' visitation rights be terminated. The court directed the DHHR to file a written motion and scheduled an evidentiary hearing for October 4, 2002. At that hearing, the court terminated the appellants' visitation with their children. This appeal followed.

## II.

### STANDARD OF REVIEW

As set forth above, the appellants appeal the termination of their parental rights and visitation with their children. "For appeals resulting from abuse and neglect proceedings, such as the case *sub judice*, we employ a compound standard of re-

view: conclusions of law are subject to a *de novo* review, while findings of fact are weighed against a clearly erroneous standard." *In re Emily*, 208 W.Va. 325, 332, 540 S.E.2d 542, 549 (2000). As we explained in Syllabus Point 1 of *In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996),

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

With these standards in mind, we now consider whether the circuit court erred in this case.

## III.

### DISCUSSION

#### A. Termination of Parental Rights

The appellants first contend that they were able to show that there was a reasonable likelihood that the conditions of neglect and abuse suffered by their children could be substantially corrected in the near future, and therefore, the circuit court erred by terminating their parental rights. In making this argument, the appellants fail to point to any specific evidence to support their contention. Instead, they emphasize the fact that the children were not physically harmed as a

---

**4.** Apparently, Eric C. was incarcerated at this time in Pike County, Kentucky, on a shoplifting charge. Phoebe C. had also been incarcerated, but was released on June 21, 2001.

result of being left alone in the car on June 18, 2001. They also say that the court focused on the limited cognitive functioning of Phoebe C. and failed to consider evidence indicating that her mental health problems could be treated.

As set forth above, the circuit court granted the appellants a 90-day post-adjudicatory improvement period. Thereafter, the court conducted the disposition hearing and found that the only alternative in this case was the termination of parental rights. In making that finding, the Court stated that Eric and Phoebe C.

a) Have previously demonstrated no intention or desire to obtain and provide a clean, safe and stable home for the children and, to this date, does [sic] not have a permanent place of residence which meets with the approval of the Court;

b) Have abused and/or are addicted to prescription medications and admit that they need more than prescription medication, contrary to their therapists opinions;

c) Have been unwilling to cooperate in the development of or follow a reasonable family care plan designed to lead to the children's return to their care, custody and control;

d) At no point throughout the course of these proceedings does it appear that the Respondent parents have made any concerted effort to cooperate in the best interests of their children, or even make the appropriate effort to attend visitation with their children.

e) Missing a visitation because it is "check day" is simply an unacceptable excuse to give the caseworkers, [Loretta C.], or the Court in this case.[5]

(Footnote added).

■■■ In Syllabus Point 4 of *In the Matter of Jonathan P.*, 182 W.Va. 302, 387 S.E.2d 537 (1989), this Court held that:

"Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, *W.Va.Code*, 49-6-5 [1977]

may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under *W.Va.Code*, 49-6-5(b) [1977] that conditions of neglect or abuse can be substantially corrected." Syllabus Point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

This Court has further stated that:

"[C]ourts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened ...." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syllabus Point 7, in part, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991). Based upon the above, as well as our review of the entire record in this case, it is clear that the appellants failed to present any evidence to show that there was a reasonable likelihood that the conditions of abuse and neglect suffered by their children could be substantially corrected in the near future.

These children were found to be neglected because the appellants abused prescription medications, had a history of domestic violence, and failed to provide the children with necessary supervision and care. In addition, they effectively abandoned Oakie Lee C. by leaving him with his maternal aunt since he was six months old. It was only after these proceedings began that the appellants sought to remove Oakie Lee from Loretta C.'s home. Although they were granted an improvement period, the appellants made no serious effort to change their behavior or provide a stable home for their children. The DHHR made several attempts to help the appellants regain custody of their children, but the appellants refused to cooperate and continued to abuse prescription drugs. Accordingly, the circuit court did not err in terminating the appellants' parental rights.

### B. Termination of Visitation

The appellants also claim that the circuit court erred by terminating their post-termination visitation with their children based upon events that occurred after the disposi-

---

5. Phoebe C. receives social security benefits, and the court is referring here to an instance when the appellants explained their absence at a scheduled visitation with their children by stating that it was "check day."

tional hearing, but before the final dispositional order was entered. Those events included the appellants missing two of five scheduled visits in April 2002. During the visits that did occur that month, the children did not recognize the appellants as their parents. Also, in April 2002, the appellants failed to submit to a random drug screen. In May 2002, the appellants separated and began visiting the children individually, which caused the children to become confused. Phoebe C. missed two visits in May 2002, and Eric C. had problems keeping all the children occupied at one time during his visits.

In Syllabus Point 5 of *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995), this Court held that:

> When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.

As previously noted, the circuit court initially believed that continued contact between the appellants and their children would be appropriate in this case. However, following the failure of a strong effort to effect post-termination visitation by the DHHR and after a judicial review and hearing, the court determined that continued visitation was no longer in the children's best interest.

In this appeal, the appellants seek to reverse the court's decision terminating their visitation based on a procedural error, i.e., the court's failure to enter the dispositional order in a timely manner.[6] While the court should have entered the order in a timely fashion,[7] we are unable to conclude that the appellants were prejudiced by the late entry as they were allowed to continue to visit their children during that time. More importantly, "a mere procedural technicality does not take precedence over the best interests of the children." *In re Tyler D.*, 213 W.Va. 149, 578 S.E.2d 343, 354 (2003). As this Court has said on numerous occasions, "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989). *See also* Syllabus Point 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972) ("'In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Point 2, Syllabus, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302 [47 S.E.2d 221].").

In this case, it is now clear that continued visitation would be detrimental to the children. While the conduct of the appellants in April and May of 2002 was not satisfactory, their actions in August and September of 2002 were even more egregious. They were arrested on August 16, 2002, for domestic assault and domestic battery of each other. Also, on August 20, 2002, both appellants had positive drug screens for the drug Butalbital.

---

6. Pursuant to Rule 38 of the Rules of Procedure for Abuse and Neglect Proceedings, "[w]ithin ten (10) days of the conclusion of the [disposition] hearing, the court shall enter a final disposition order[.]"

7. Almost three months elapsed between the dispositional hearing and entry of the dispositional order in this case. Such a delay is unconscionable, unacceptable, and unfair to the children. This Court has often stressed the necessity for rapid finality in abuse and neglect proceedings. Specifically, we have mandated that, "Child abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security." Syllabus Point 1, in part, *In the Interest of Carlita B.* In accordance with that directive, this Court adopted the Rules of Procedure for Child Abuse and Neglect Proceedings in 1996 to ensure that abuse and neglect cases are resolved in the most expeditious manner possible. *See* Rule 2 ("These rules are designed … [t]o reduce unnecessary delays in court proceedings through strengthened court case management."). With that said, we hereby advise all circuit judges that in the future unnecessary delays in abuse and neglect proceedings will be examined very closely, and this Court will take whatever action is required to guarantee the efficient and timely disposition of abuse and neglect cases.

 

Although Phoebe C. was able to produce a valid prescription to explain her positive drug screen, Eric C. was not. Finally, on September 2, 2002, Phoebe C. was arrested for two counts of destruction of property. She was under the influence of alcohol at the time of her arrest.

In sum, there was a considerable amount of evidence presented to the circuit court showing that the appellants continue to abuse prescription drugs and have significant family and other legal problems. Their relationship with each other is at best unstable and domestic violence between them is a frequent occurrence. In addition, the record indicates that the children no longer wish to have contact with the appellants. Consequently, continued visitation would not be in the children's best interest. Thus, the circuit court did not err by terminating the appellants' visitation with their children.

### IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Mingo County entered on October 28, 2002, is affirmed.

Affirmed.