620 S.E.2d 141

**In re MICHAEL S. JR.**

No. 32167.

Supreme Court of Appeals of
West Virginia.

Submitted: May 11, 2005.

Filed: July 6, 2005.

Stephen P. New, Esq., Beckley, for Appellant Tina S.

Diana Carter Wiedel, Esq., Legal Aid of West Virginia, Williamson, Guardian Ad Litem.

William H. Duty, Esq., Williamson, for Appellee Michael S., Sr.

Teresa D. Hall Maynard, Esq., Williamson, for Appellant Brenda E.

Darrell V. McGraw, Jr., Attorney General, William P. Jones, Assistant Attorney General, Charleston, for Appellee West Virginia Department of Health and Human Resources.

The Opinion was delivered PER CURIAM.

PER CURIAM.

Tina S. ("Tina"), the intervenor below and the appellant before this Court, appeals a final order of the Circuit Court of Mingo County entered on May 27, 2004, terminating the intervenor status of Tina and thus denying her request to adopt Michael S. Jr. ("Michael Jr.").

We affirm the circuit court's ruling terminating Tina's intervenor status; and we agree with the circuit court that it is in the best interest of the child for the West Virginia Department of Health and Human Resources ("DHHR") to immediately begin a search for another adoptive placement option for Michael Jr.

I.

This case arises from a referral received on October 25, 2003, by the DHHR about the living conditions, hygiene, and mental health of Michael Jr., a five year old child. The referral alleged that the homes of his biological parents, Brenda E. and Michael Sr. ("Brenda" and "Michael Sr."), were in deplorable condition; that both parents and child suffered from poor hygiene; that Michael Jr. was not potty trained at age five; and that both parents were substance abusers.

After the DHHR investigated [1] the referral, the DHHR filed a child abuse and neglect petition on December 15, 2003, pursuant to W.Va.Code, 49–6–3 [2005] against Brenda and Michael Sr., seeking immediate custody of Michael Jr.

At a December 15 hearing, the circuit judge found sufficient evidence to justify immediate removal of Michael Jr. from the custody of his biological parents. Michael Jr. was directly remanded into the DHHR's custody based on a finding that he was in imminent danger due to aggravated circumstances. Michael Jr. was also appointed a guardian ad litem to represent and protect his best interest.

On December 17, 2003, a preliminary hearing was convened and the circuit judge held that Michael Jr. should remain in the legal and physical custody of the DHHR.[2] The appellant, Tina, who is a friend of Brenda, was given intervenor status at this hearing because she expressed an interest in adopting Michael Jr.

At the hearing Tina was told that she would be required to fill out the necessary paperwork, complete a home study, and undergo a psychological evaluation.

An adjudicatory hearing was held on January 20, 2004. At that hearing the circuit court found that Michael Jr. was a neglected child in accordance with W.Va.Code, 49–6–2(c) [2005]. Tina attended this hearing and was informed of the date for her psychological evaluation.

At a February 23, 2004 dispositional hearing, Brenda and Michael Sr. requested a post-adjudicatory improvement period. The circuit court granted a sixty-day improvement period for Brenda, but denied Michael Sr.'s request. Another dispositional hearing was scheduled for April 21, 2004, at 3:30 p.m.

---

1. The investigator not only found deplorable living conditions, but was also told by Michael Sr., that he had been previously convicted in Ohio of several counts of gross sexual imposition against minor children.

2. The judge also found, inter alia, that: (1) Michael S. and Brenda E. lived in two separate homes; (2) Brenda E.'s home had large holes in the bathroom and kitchen floors and you could see the ground; (3) Michael Sr., the father, did not have potable water in his home and his source of electricity was an extension cord run from Brenda E.'s home; (4) both homes were unkept and dirty; (5) each home had puppy feces on the floor; (6) [Michael Jr.] lived in the home with Michael Sr. and slept in bed with him; (7) Michael Sr., had been convicted of several counts of gross sexual imposition against children under the age of thirteen; and (8) Brenda E. was aware of prior sexual convictions.

On April 16, 2004, Tina transported Brenda to a supervised visit with Michael Jr. The DHHR caseworker was present at the visit, and reported that there was little interaction between Tina and Michael Jr., and the interaction that did take place showed no signs of an emotional bond between the two.

On April 20, 2004, the day before the scheduled April 21 dispositional hearing, the circuit court changed the time for the April 21 hearing from 3:30 p.m. to 8:30 a.m. Brenda was present for the April 21, 2004 hearing, but Tina did not attend the hearing. Due to the limited record, it is unclear whether Tina informed Brenda of the time change, or if Brenda informed Tina. But it is clear that Tina knew of the hearing and failed to attend. At the hearing, Brenda was granted an extension on her improvement period.

The court held a final dispositional hearing on May 27, 2004. Tina did not attend this hearing in person, but was represented by counsel. Evidence was presented by the DHHR caseworker to the effect that no emotional bond existed between Michael Jr. and Tina; that Tina did not complete a home study or psychological evaluation;[3] and that Tina had not had any contact with Michael Jr. in more than a month. Tina also failed to attend a multi-disciplinary treatment team ("MDT") meeting where DHHR workers who were working on the Michael Jr. case discussed what was in the best interest of Michael Jr.

The circuit court's order from the May 27 hearing reflected that Brenda voluntarily relinquished her parental rights to Michael Jr. The order also terminated the parental rights of Michael Sr. because of his neglect of Michael Jr. and his non-participation with the hearings and services offered. The order also states that, due to Tina's non-cooperation with the proceedings and her failure to attend visitations or hearings, placement of Michael Jr. with Tina would not be in the best interest of the child. In conclusion the order stated that Michael Jr. should immediately be placed for adoption.

## II.

"In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syllabus Point 2, *Walker v. West Virginia Ethics Commission,* 201 W.Va. 108, 492 S.E.2d 167 (1997).

Also, under the abuse of discretion standard, we will not disturb a circuit court's decision unless the circuit court makes a clear error of judgment or exceeds the bounds of permissible choices in the circumstances. *Hensley v. West Virginia Department of Health and Human Resources,* 203 W.Va. 456, 461, 508 S.E.2d 616, 621 (1998).

In cases dealing with children this Court has repeatedly stated that the best interest of the child is the polar star upon which decisions should be based. *In re Erica C.,* 214 W.Va. 375, 589 S.E.2d 517 (2003). Determining what is in the child's best interest is especially important when the child has been abused and neglected by his or her own parents and is currently in limbo as to a permanent home. "Child abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability, and security." Syllabus Point 2, *In re Michael Ray T.,* 206 W.Va. 434, 525 S.E.2d 315 (1999). With the standard of the best interest of the child guiding this decision, we turn to the issue in the instant case: whether the circuit court erred in ruling against placing Michael Jr. in the adoptive custody of Tina, and in dismissing her as an invervenor.

Tina argues that her dismissal as an intervenor and possible adoptive parent of Michael Jr. was improper because she was not given any notice of a time change for a dispositional hearing, and that the lack of notice caused her to miss the April 21 hear-

---

3. It was later determined that the evaluation was never performed, based on a letter from the doctor who was to perform the evaluation, because Tina had canceled the appointment and never rescheduled.

ing. Thus, Tina argues, she was prevented from presenting "her side of the story" as to why she would be an appropriate candidate to adopt Michael Jr.

However, the DHHR points to the fact that the biological mother, Brenda, testified that she spoke with Tina and that Tina did know of the time change for the dispositional hearing. The DHHR also presented evidence showing that it notified Tina of the change in time. Finally, the DHHR points to all of the previous hearings, meetings, and visitations in the case where Tina could have shown a consistent and caring interest in Michael Jr., but did not.

While the limited record from below does not show that formal written notice was given to Tina of the time change, the circuit court found that she was informed of the time change by Brenda. Formal written notice of a time change for a proceeding may be necessary in some instances. However, in the instant case it is clear that Tina had actual notice as to when the dispositional hearing was going to occur, and she did not attend the hearing.

The lack of formal written notice in this instance should not be overlooked, but it is not outcome determinative. "Cases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren)." Syllabus Point 3, *In re Michael Ray T.*, 206 W.Va. 434, 525 S.E.2d 315 (1999). Michael Jr. needs immediate permanency, consistency, and stability to counteract the lack of care and learning of his infant childhood.

Furthermore, Tina's absence from court proceedings, because of an alleged lack of notice or other reasons cannot be taken as meaning that she had a lack of opportunity to have her position considered by the court.

Tina canceled her psychological evaluation, and never scheduled a home study. She did not attend an MDT in which placement options for Michael Jr. were discussed. Tina transported Brenda to visitations with Michael Jr., but Tina herself only visited once with Michael Jr.—then only for a short period of time. During this short visit, the DHHR caseworker noticed no emotional bond between Tina and Michael Jr. Tina never requested additional meetings with Michael Jr., and took no steps to further the possibility of becoming his adoptive parent. The court stated that "[d]ue to Tina S.'s noncooperation with these proceedings and failure to attend the visitations with the child and the hearings in this matter, placement of the child with Tina S. would not be in the best interests of the child."

From the record before the Court, there is more than sufficient evidence to affirm the circuit court's decision to dismiss Tina as intervenor and possible adoptive parent of Michael Jr.

### III.

In conclusion, we find that the circuit court did not abuse its discretion in dismissing the intervenor, Tina S., from consideration as the potential adoptive parent for Michael Jr., because she was non-cooperative with the proceedings and failed to attend visitations and hearings. Any further delay in this case would be unjust to Michael Jr. and would be against his best interest. Accordingly, it is in the best interest of Michael Jr. that he be placed for permanent adoption according to DHHR policy and procedure. The order of the Circuit Court of Mingo County is affirmed.

Affirmed.