# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: A.N.-2

No. 17-0534 (Cabell County 15-JA-329)

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father A.N.-2, by counsel Alvie E. Qualls II, appeals the Circuit Court of Cabell County's March 15, 2017, order terminating his parental rights to two-year-old A.N.-3.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Elizabeth Gardner Estep, filed a response on behalf of the child also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner alleges that the circuit court (1) erred in failing to enforce its order for paternity testing; (2) erred in adjudicating petitioner on the basis of abandonment and financial neglect; and (3) erred in terminating petitioner's parental rights on the basis of abandonment and financial neglect.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2015, the DHHR filed an abuse and neglect petition against petitioner and the child's mother alleging that the mother abused drugs, alcohol, and controlled substances throughout her pregnancy and that the child was exposed to drugs, alcohol, and controlled substances in utero. The petition also alleged that petitioner neglected the child due to his incarceration and his inability to provide for or take care of the child. Also in December of 2015, the circuit court held a preliminary hearing. Petitioner was not present in person, but he was represented by counsel, who acknowledged that petitioner was incarcerated. The circuit court found no alternative to the DHHR's custody and that it would be "extremely detrimental to the child to be returned to his mother." The circuit court also found that petitioner was not an option for placement due to his incarceration.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because petitioner and the child share the same initials, we refer to the child as A.N.-3 and to petitioner as A.N.-2 throughout this memorandum decision.

In July of 2016, the circuit court held an adjudicatory hearing. Petitioner appeared by teleconference from the Michigan Correctional System and by counsel. Petitioner requested paternity testing for the child because he initially denied being the child's father. Petitioner's counsel proffered, and the mother testified, that the child was conceived during a conjugal visit between petitioner and the mother. The circuit court initially granted petitioner's request and adjudication was postponed. However, due to the Michigan Corrections Systems' failure to cooperate, the paternity testing was never conducted.

Beginning in February of 2016, the circuit court held three additional adjudicatory hearings. Petitioner appeared by teleconference and was represented by counsel at each. The mother testified that she believed that petitioner was the child's father and indicated that she had obtained the paperwork for establishing paternity. Despite his initial denial, petitioner held himself out to be the child's father, testifying that "I believe [he is] mine." Petitioner also testified that he had

> been financially helping [the child] through my family. I have sent him clothes, car seats and tried to help with certain expenses since I have been incarcerated. So it is not like I am just not doing nothing, I was just trying to make sure that he is all right.

Petitioner's counsel informed the circuit court that paternity testing had not been conducted. The circuit court determined that, based on the testimony presented, the adjudication could move forward and if, at a later date, petitioner is proved not to be the child's biological father, the same could be set aside. A DHHR worker testified that she had not received any contact from petitioner regarding the child or visitation with the child. She also testified that petitioner had been incarcerated throughout the entirety of the proceedings and was unable to provide for or care for the child. The circuit court adjudicated petitioner as an abusing parent on the basis that he was incarcerated in the State of Michigan "at all times pertinent hereto," and on financial and emotional neglect.

In March of 2017, the circuit court held a dispositional hearing. Based on the evidence presented, the court found that petitioner remained incarcerated, which rendered him unable to have any involvement in the child's life. Therefore, the circuit court concluded that petitioner emotionally and financially abused the child. Thereafter, the circuit court found that termination of petitioner's parental rights was in the child's best interests; that there was no alternative to termination that could ensure the child's physical and emotional well-being; and that there was no indication that the conditions of neglect could be corrected in the near future. As such, the circuit court terminated petitioner's parental rights to the child by order dated March 15, 2017.[2] This appeal followed.

---

[2]Both parents' parental rights to the child were terminated below. According to the guardian, A.N.-3 was placed with the same foster family as his sibling, A.N.-1, and the permanency plan is adoption into that home.

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in failing to enforce its order allowing for paternity testing. We have held that "children have a right to resolution of their life situations, to a basic level of nurturance, protection, and security, and to a permanent placement." *In re Amy M. v. Kaufman*, 196 W.Va. 251, 257, 470 S.E.2d 205, 211 (1996). Further, under Rule 2 of the Rules of Procedure for Child Abuse and Neglect, we have also held that any "unnecessary delays in abuse and neglect proceedings will be examined very closely, and this Court will take whatever action is required to guarantee the efficient and timely disposition of abuse and neglect cases." *In re Erica C.* 214 W.Va. 375, 589 S.E.2d 517*,* n. 7 (2003). In this case, the circuit court's decision to proceed without paternity testing was a well-reasoned decision based on the testimony of petitioner and the mother affirming that they both believed that petitioner was the child's biological father. Moreover, the circuit court moved forward with adjudication with the caveat that if petitioner was ultimately proved not to be the child's biological father, the adjudication could be set aside. It is clear that the circuit court was attempting to expedite the resolution of this matter, which is in line with this Court's directives and the Rules of Procedure for Child Abuse and Neglect.

Petitioner next argues that the circuit court erred in adjudicating him as a neglectful parent and in terminating his parental rights based upon its finding of abandonment and lack of financial support. Petitioner alleges that, under West Virginia law, he must engage in some affirmative or negative conduct that could lead to abandonment of the child. He contends that he supported the child through his family. We disagree. After examining petitioner's argument and the relevant statutory law, we find petitioner's reliance upon West Virginia Code § 48-22-306 to be misplaced.

First, West Virginia Code § 48-22-306 and its related provisions specifically govern adoptions, rather than child abuse and neglect proceedings. Child abuse and neglect proceedings, however, are governed by their own statutory scheme. *See generally* W.Va. Code § 49-1-101

through 49-4-10. In child abuse and neglect proceedings "'[a]bandonment' means any conduct that demonstrates the settled purpose to forego the duties and parental responsibilities to the child[.]" W.Va. Code § 49-1-201.

Further, West Virginia Code § 49-1-201 defines a "neglected child" as a child

[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian.

West Virginia Code § 49-1-201 defines an "abusing parent" as "a parent, guardian or other custodian, regardless of his or her age, whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." Upon our review of the record on appeal, the Court finds no error in the circuit court's finding that petitioner abandoned his child.

In this case, the DHHR presented testimony at the adjudicatory hearing that petitioner had no contact with the child due to his incarceration, never provided the child with any financial support, and did not contact the DHHR with regard to the child or visitation. Despite petitioner's testimony that he provided the child with a birthday present, clothing, diapers, milk, and a car seat, the circuit court was never presented with receipts or other proof of the alleged support. Further, petitioner admitted that he has been incarcerated or on parole for a period of nine years. The circuit court determined that, based upon petitioner's most recent criminal charges, he could be incarcerated for an additional ten years. The circuit court found that, based upon his circumstances, petitioner was unable to comply with any family case plan. The facts of this case clearly meet the statutory definition of abandonment. *See* W.Va. Code §§ 49-1-201. As such, the circuit court did not err in adjudicating petitioner as a neglecting parent.

Finally, petitioner argues that the circuit court erred in terminating his parental rights to the child because he wanted a relationship with the child. We disagree. West Virginia Code § 49-4-604(b)(6) directs circuit courts to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) provides that "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

In this case, the circuit court specifically found that petitioner's incarceration rendered him unable to be involved in the child's life and that termination of his parental rights was in the child's best interests. The circuit court also found that there was no alternative to termination that could ensure the child's physical and emotional well-being and no indication that the conditions of neglect could be corrected in the near future. Given petitioner's incarceration and resulting inability to participate in the child's life or provide for the child, we find no error in the circuit court's termination order. The circuit court properly found that petitioner was not reasonably

4

likely to substantially correct the conditions of abuse and neglect in the near future, and it is clear from the record that the child's welfare necessitated the termination of petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon such findings. Accordingly, we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 15, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker