(929 P.2d 188)
No. 76,459

BARBARA V. SOWERS and JAMES W. SOWERS, *Appellants*, v. PETER
TSAMOLIAS and TOULA TSAMOLIAS, *Appellees*.

■■■■■■■ Opinion filed
December 20, 1996. ■■■■

*Patrick E. Henderson*, of Duncan-Senecal Law Offices, Chtd., of Atchison, for appellants.

*John W. Fresh* and *Larry R. Mears*, of Larry R. Mears, Chartered, of Atchison, for appellees.

Before ELLIOTT, P.J., KNUDSON, J., and RICHARD M. SMITH, District Judge, assigned.

SMITH, J.: Appellants, Barbara V. Sowers and James W. Sowers appeal from the district court's dismissal of their petition for visitation with an unmarried minor, A.E. We affirm.

The essential facts are not in dispute. A.E. is the adopted child of the appellees, Peter and Toula Tsamolias. Prior to adoption, A.E. was the subject of a child in need of care action. Upon stipulation by the birth mother, Tina E., and the child's putative fathers, A.E. was adjudicated a child "in need of care." Subsequently, the parental rights of Tina E. and the putative fathers were terminated pursuant to K.S.A. 38-1581 *et seq*.

During the course of the child in need of care proceedings, the Tsamoliases were A.E.'s foster parents. The Sowers are the parents of Tina E. Pursuant to an order of the district court, the Sowers were granted visitation with A.E. while in foster care.

In August 1995, the court, after a hearing, entered a dispositional order authorizing SRS to initiate adoption proceedings for A.E. Barbara Sowers had attended every previous hearing and was present at the dispositional hearing. At the dispositional hearing, Barbara stated that she did not want to give up her rights as a grandparent as the result of any adoption. She asked the court whether she would lose her status as a grandparent if the adoption was completed. The court told Barbara that her right to visitation would depend upon the decision of any adoptive parents.

The Sowers did not seek adoption of A.E., nor did they object to the adoption of A.E. by the Tsamoliases. The adoption was final on January 25, 1996.

In February 1996, the Sowers filed a motion in the district court requesting grandparent visitation rights to A.E. The Sowers suggested that they had a positive relationship with A.E. prior to and during the child in need of care proceeding. They also maintained the relationship between A.E. and his sister, B.E., who was in their custody. The Sowers argued that continuing their relationship with A.E. was in his best interests and should be permitted under K.S.A. 38-129. The motion for visitation also alleged that the Sowers relied on assurances by the Tsamoliases that they would be allowed to continue their relationship with A.E. and should be allowed visitation rights under a theory of equitable estoppel.

The Tsamoliases filed an answer to the Sowers' petition and moved to dismiss the proceeding for failure to state a claim on which relief could be granted. The Tsamoliases further argued the Sowers lacked standing to seek visitation because the Sowers were no longer A.E.'s grandparents.

A hearing was held on a motion to dismiss the petition on March 11, 1996. The court granted the motion to dismiss the petition for visitation, ruling that it had no jurisdiction to grant the Sowers' request. The Sowers appeal this order of dismissal.

The Sowers essentially raise two primary issues on appeal: (1) The trial court erred by dismissing their petition to establish visitation without a consideration of its merits; and (2) the Tsamoliases should be equitably estopped from denying visitation.

Whether the court erred by dismissing the Sowers' petition for visitation is controlled by the legislative intent of K.S.A. 38-129 and K.S.A. 59-2118. Although the well-pleaded facts of the Sowers' petition are assumed to be true, *Blevins v. Board of Douglas County Comm'rs*, 251 Kan. 374, 381, 834 P.2d 1344 (1992), interpretation of the intent of the visitation and adoption statutes is a question of law and our review is plenary. *In re Estate of Hinderliter*, 20 Kan. App. 2d 29, 30, 882 P.2d 1001, *rev. denied* 256 Kan. 995 (1994).

The applicable rules of statutory construction have been frequently stated: "It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the leg-

islature governs if that intent can be ascertained." *In re J.A.C.*, 22 Kan. App. 2d 96, Syl. ¶ 4, 911 P.2d 825 (1996).

"In determining legislative intent, courts are not limited to a mere consideration of the language used, but may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested." *Galindo v. City of Coffeyville*, 256 Kan. 455, Syl. ¶ 4, 885 P.2d 1246 (1994).

"A statute must be interpreted in the context in which it was enacted and in light of the legislature's intent at that time." *State Bd. of Nursing v. Ruebke*, 259 Kan. 599, Syl. ¶ 12, 913 P.2d 142 (1996).

"In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. When the provisions of two or more acts affect the same issue and subject matter, the same rule applies." *United Steelworkers of America v. Kansas Comm'n on Civil Rights*, 253 Kan. 327, Syl. ¶ 1, 855 P.2d 905 (1993).

"When a statute is plain and unambiguous, the court must give effect to the intent of the legislature as expressed rather than determine what the law should or should not be." *Tompkins v. Bise*, 259 Kan. 39, Syl. ¶ 1, 910 P.2d 185 (1996).

Visitation rights between grandparents and grandchildren and between adopted persons and others is purely a province of statute. Grandparents have no natural or common-law rights to grandchildren. *Browning v. Tarwater*, 215 Kan. 501, 504, 524 P.2d 1135 (1974); *In re Johnson*, 210 Kan. 828, 831-32, 504 P.2d 217 (1972); *In re Bullen*, 28 Kan. *781, *783 (1882). The understanding that adoption is a concept foreign to the common law is ancient. *In re Estate of Robbins*, 241 Kan. 620, 623, 738 P.2d 458 (1987); *Gray v. Holmes*, 57 Kan. 217, 221, 45 Pac. 596 (1896). Therefore, the law of adoption is dependent on state statutory law. 241 Kan. at 623; *Riemann v. Riemann*, 124 Kan. 539, 541, 262 Pac. 16 (1927).

K.S.A. 59-2118 specifies the effect adoption has upon the rights of the birth and adoptive parents. It provides:

"(a) Any person adopted as provided in K.S.A. 59-2111 through 59-2143, and amendments thereto, shall assume the surname of the petitioner or petitioners for adoption, except that the court in its discretion may permit a different surname when requested by the petitioner or petitioners. When requested by the petitioner or petitioners, the court, in its discretion, may change the given name or names of the person adopted.

"(b) When adopted, a person shall be entitled to the same personal and property rights as a birth child of the adoptive parent. *The adoptive parent shall be entitled to exercise all the rights of a birth parent and be subject to all the liabilities of that relationship. Upon adoption, all the rights of birth parents to the adopted person, including their right to inherit from or through the person, shall cease, except the rights of a birth parent who is the spouse of the adopting parent.* An adoption shall not terminate the right of the child to inherit from or through the birth parent." (Emphasis supplied.)

The prior statute, K.S.A. 59-2103 (Ensley 1983) (effective July 1, 1939) contained operative language identical to the pertinent portion of K.S.A. 59-2118(b). Pursuant to this statutory language, the effects of adoption include the creation of a new legal status of parent and child upon the adoptive parents and adopted children. *State ex rel. Secretary of SRS v. Clear*, 248 Kan. 109, 116, 804 P.2d 961 (1991). The child no longer remains the child of its natural parents, but becomes the child of another, and its relation to its natural parent ceases. *Sheppard v. Sheppard*, 230 Kan. 146, 151, 630 P.2d 1121 (1981), *cert. denied* 455 U.S. 919 (1982); *Jones v. Jones*, 215 Kan. 102, Syl. ¶ 5, 523 P.2d 743 (1974).

This statutory language has consistently been interpreted by our courts as changing the legal status of the child such that the birth or natural parents, after adoption, are strangers or third parties. *Wilcox v. Fisher*, 163 Kan. 74, 78, 180 P.2d 283 (1947); *Browning v. Tarwater*, 215 Kan. at 505; *Jones v. Jones*, 215 Kan. at 112. Not only does the child have new parents, but also the effect is that the child has new grandparents as well. *Browning v. Tarwater*, 215 Kan. at 506; *In re Johnson*, 210 Kan. at 834. Where this new status is conferred, the court is without authority to grant the birth parents visitation. *Browning v. Tarwater*, 215 Kan. at 505-06 (citing 2 Am. Jur. 2d, Adoption § 85). Whether natural or birth grandparents can continue contact is a matter left solely to the discretion of the adoptive parents. *In re Johnson*, 210 Kan. at 834.

Adoption carries with it a complete breaking or severance of the child's ties and relationship with his or her natural parents. *State ex rel. Secretary of SRS v. Clear*, 248 Kan. at 116; *In re Herbst*, 217 Kan. 164, 168, 535 P.2d 437 (1975); *Browning v. Tarwater*, 215 Kan. at 505. Grandparents are considered among the ties from the past of which the new legal relationship is intended to be free. 1 Elrod, Kansas Family Law Handbook § 13.031, p. 13-13 (1990).

The only statutory provision for visitation by natural and birth grandparents outside the context of a divorce proceeding is found in K.S.A. 38-129. The question before the court is whether K.S.A. 38-129 was intended to provide natural or birth grandparents visitation rights to children after a termination of parental rights and subsequent adoption. Answering this question requires a review of the statute's historical background, the circumstances attending its most recent amendment, and its purpose.

As originally enacted in 1971, K.S.A. 38-129 (Weeks) provided:

"If either the father or mother of an unmarried minor child is deceased, the parents of such deceased person may be granted reasonable visitation rights to the minor child during its minority by the district court upon a finding that such visitation rights would be the best interests of the minor child."

The Supreme Court was called upon to interpret this statute in the context of an adoption in *Browning v. Tarwater*, 215 Kan. 501. In that case, Mrs. Tarwater had been granted visitation with the children of her deceased son. The children's mother subsequently remarried, and her new spouse had been granted a stepparent adoption of the children. The new parents sought a termination of the visitation. After analyzing K.S.A. 59-2103 (Ensley 1983) and K.S.A. 38-129 (Weeks), the Supreme Court determined that the legislature did not design 38-129 to overturn the previously established adoption laws and ruled that the legislature did not intend 38-129 to have application after a minor child was adopted by a stepparent. 215 Kan. at 507.

Responding to the *Browning* decision, the legislature amended 38-129 in 1982. L. 1982, ch. 182, § 149. The amendment made it abundantly clear that parents of deceased persons could enjoy visitation with the children of their deceased offspring even after a stepparent adoption:

"(a) If a parent of an unmarried minor child is deceased, the district court may grant the parents of the deceased person reasonable visitation rights to the minor child during the child's minority upon a finding that the visitation rights would be in the best interests of the minor child.

"(b) Unless the court finds that the visitation rights are not in the child's best interest, the court may grant visitation rights, or enforce visitation rights previously granted, pursuant to this section, even if the surviving parent has remarried and the surviving parent's spouse has adopted the child. Visitation rights may be granted pursuant to this subsection without regard to whether the adoption of the child occurred before or after the effective date of this act."

Absent the death of the child's parent, the statute conferred no rights of visitation.

The statute was again amended in 1984 to its present version.

"(a) The district court may grant the grandparents of an unmarried minor child reasonable visitation rights to the child during the child's minority upon a finding that the visitation rights would be in the child's best interests and when a substantial relationship between the child and the grandparent has been established.

"(b) The district court may grant the parents of a deceased person visitation rights, or may enforce visitation rights previously granted, pursuant to this section, even if the surviving parent has remarried and the surviving parent's spouse has adopted the child. Visitation rights may be granted pursuant to this subsection without regard to whether the adoption of the child occurred before or after the effective date of this act."

The amendment, finalized in S.B. 615, was combined with S.B. 681. In describing the final version recommended by the House, the House Judiciary Committee minutes indicate that the effect "was clarified that the amendment would extend grandparents' visitation rights which, under present law pertains only to divorced or deceased parent situations, to *intact* families." (Emphasis added.) Committee Minutes, House Committee on the Judiciary, S.B. 615, March 27, 1984.

Testimony in support of the amendment included an analysis of the legislation. Committee Minutes, House Committee on the Judiciary, March 27, 1984. The analysis emphasized that grandparents could only seek visitation when the grandparents' adult child was divorced or deceased. The legislative analysis went on to describe six situations the amendment would affect. All of those situations dealt with intact families or unwed, disabled, or confined

parents. None of the situations contemplated visitation rights to a birth or natural grandchild after adoption.

None of the recorded debate in the Senate makes any mention of extending visitation rights to adopted children. See Committee Minutes, Senate Committee on the Judiciary, S.B. 681, March 2, 1984.

The plain language used in the new section of the statute extends visitation rights to grandparents. After adoption, the natural or birth grandparents no longer enjoy the status of grandparents. The legislature has recognized this change in status in K.S.A. 38-129(b). In this subsection, the persons granted rights of visitation are referred to as "parents of deceased persons."

The Sowers rely on language found in *In re Adoption of J.M.U.*, 16 Kan. App. 2d 164, 819 P.2d 1244, *rev. denied* 250 Kan. 805 (1991). Dicta in that case tends to indicate that the legislative intent of the 1984 amendment to 38-129 was to grant all grandparents a right to seek visitation and that "[d]eath, divorce, or adoption are not mentioned as prerequisites." 16 Kan. App. 2d at 167.

In *In re Adoption of J.M.U.*, the child had been adopted by a maternal aunt after the child's father had tragically killed the child's mother, then himself. J.M.U.'s paternal birth grandmother sought visitation after the child was adopted. The trial court found no statutory authority and dismissed the request. This court reversed the trial court, holding that the paternal birth grandmother was entitled to visitation subject to the "best interests" and "substantial relationship" tests because she was a parent of a deceased person pursuant to K.S.A. 38-129(b).

In this case, the Sowers are not parents of deceased persons but parents of a person whose parental rights have been terminated pursuant to K.S.A. 38-1581 *et seq*. Termination of parental rights is a final and permanent settlement of all problems of custody and supervision by a complete and final divestment of all legal rights, privileges, duties, and obligations of the parent and child with respect to each other and by replacement of a natural parent by another guardian or adoptive parent. *State ex rel. Secretary of SRS v. Clear*, 248 Kan. at 115; *Roelfs v. Wallingford, Inc.*, 207 Kan. 804,

811, 486 P.2d 1371 (1971); *Wilson v. Kansas Gas & Electric Co.*, 12 Kan. App. 2d 336, 340, 744 P.2d 139 (1987).

After adoption, A.E. ceased to be the grandchild of the Sowers. As such, they are third parties possessing no standing to seek visitation pursuant to K.S.A. 38-129.

The courts have recognized that the change in status effected by adoption and its consequences seem harsh, in view of the existing love of a grandparent. *In re Johnson*, 210 Kan. at 834. But as Justice Six wrote for the Supreme Court in *In re Hood*, 252 Kan. 689, 694, 847 P.2d 1300 (1993): "The legislature is the forum to entertain sociological and policy considerations bearing on the well-being of children in our state. Any expansion of visitation rights to unrelated third parties ought to originate with the legislature." Granting the Sowers the legal status of grandparents would abrogate the express intent of K.S.A. 59-2113 and amount to a judicial extension of K.S.A. 38-129 beyond the intent of the legislature.

The second issue raised by the Sowers is that the Tsamoliases should be equitably estopped from denying visitation. In substance, they allege that the Tsamoliases repeatedly assured the Sowers they would be able to visit and maintain a relationship with A.E. and only altered this position after adoption was final. The Sowers argue that the doctrine of equitable estoppel should then prevent the Tsamoliases from contesting their request for visitation.

Equitable estoppel arises in connection with "voluntary conduct of the party that precludes that party, both at law and at equity, from asserting rights against another who relies on such conduct." *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 382-83, 855 P.2d 929 (1993). But, as previously discussed, the effects of adoption and the rights of grandparents to visitation are purely statutory. Visitation is an incident of custody. To suggest that actions of the parties alone could confer some custodial or visitation right would be tantamount to an acceptance of an equitable custodian theory. The doctrines of equitable adoption, equitable parenthood, and adoption by estoppel are not recognized in Kansas. Refusal to recognize these equitable theories in domestic relations is based on a reluctance to interfere with legislative decisions. *In re Estate of*

*Robbins*, 241 Kan. at 623-24. Recognizing a theory of visitation by equitable estoppel would eviscerate the legislatively pronounced social policy considerations of "best interests of the child" and "substantial relationship" set out in K.S.A. 38-129.

The trial court committed no error by dismissing the petition.

Affirmed.