625 S.E.2d 251

**In re the ADOPTION OF JON L.**

No. 32703.

Supreme Court of Appeals of West Virginia.

Submitted: Oct. 11, 2005.

Filed: Dec. 1, 2005.

Anita Harold Ashley, Spencer, for the Appellants, Warren Lee A. and Melissa A. A.

Charles Phalen, Jr., Bayliss & Phalen, PLLC, Charleston, for the Appellees, Robin L. and Janet L.

Justice DAVIS delivered the Opinion of the Court.

Chief Justice ALBRIGHT and Justice STARCHER concur and reserve the right to file concurring opinions.

DAVIS, Justice.

The appellants herein and petitioners below, Warren Lee A.,[1] stepfather of the minor child Jon L., and Melissa A. A., biological mother of Jon L., appeal from an order entered September 24, 2004, by the Circuit Court of Roane County. By the terms of that order, the circuit court granted the relief requested by the appellees herein, Robin L. and Janet L., paternal grandparents of Jon L., and prohibited Warren[2] and Melissa from changing Jon L.'s surname in connection with his adoption by Warren. On appeal to this Court, Warren and Melissa argue that the circuit court erred by refusing their request to change Jon's surname commensurate with Warren's adoption of the child. Upon our review of the parties' arguments, the record designated for appellate consideration, and the pertinent authorities, we find that the circuit court erred by refusing to permit the requested name change. Accordingly, we reverse the circuit court's ruling and remand this case for further proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The minor child who is the subject of these adoption proceedings, Jon C. L., was born on October 16, 1998, to his parents Jonathon Kelli L. and Melissa A.A. [formerly Melissa A. L.]. Jon's parents, Jonathon and Melissa divorced in June, 2000, but shared his custody thereafter. On October 15, 2000, Jonathon died as a result of injuries he sustained in a motor vehicle accident. Shortly thereafter, Jonathon's parents and Jon's paternal

---

1. Due to the sensitive nature of the facts at issue herein, and the confidentially customarily accorded to adoption proceedings, we will refer to the parties herein by their first names and initials. See *In re Clifford K.*, 217 W.Va. 625, 630 n. 1, 619 S.E.2d 138, 143 n. 1 (2005), and cases cited therein.

2. We recognize that the name by which Warren L.A. typically goes is "Lee," rather than "Warren". However, because the circuit court did not make this distinction, we will refer to the stepfather herein as "Warren" so as to avoid confusion with the lower court's rulings.

grandparents, Robin L. and Janet L., filed an action for grandparent visitation with Jon,[3] which visitation was granted and has since been modified as a result of Jon's attendance of preschool.

On June 7, 2003, Melissa A.A. married her current husband, Warren Lee A., at which time Jon and Melissa moved into Warren's home. Since Melissa and Warren's marriage, Warren has interacted with Jon as a father figure, Jon regards him as such, and Jon sometimes even refers to Warren as "Dad". Thereafter, on June 4, 2004, Warren, joined by Melissa,[4] filed in the Circuit Court of Roane County a petition to adopt Jon. Included within the adoptive relief sought was also a request to change Jon's name[5] from Jon C.L. to Jon C.A. so that his surname and that of his parents, his biological mother and his adoptive stepfather, would be the same. In connection with the filing of the adoption proceeding, the circuit court appointed a guardian ad litem to safeguard Jon's best interests. Also in conjunction with the filing of the adoption petition, notice of the pending adoption proceeding was provided to Robin L. and Janet L., who, as Jon's paternal grandparents, were entitled to such notice as a result of the death of their son and Jon's biological father, Jonathon.[6]

The circuit court conducted a final adoption hearing in this matter on August 2, 2004. At that hearing, the grandparents appeared by counsel and orally objected both to the child's adoption by Warren and to the proposed surname change. From the record, it is apparent that the relationship between Melissa and Robin and Janet is acrimonious, but that the grandparents have nevertheless been faithfully exercising their visitation with Jon in accordance with the order awarding them grandparent visitation. Furthermore, as a result of the unique nature of the adoption proceedings involving a stepparent in this case, it is clear that the finalization of the adoption would not usurp their right to grandparent visitation. See W. Va.Code § 48–10–902 (2001) (Repl.Vol.2004) ("If a child who is subject to a grandparent visitation order under this article is later adopted, the order for grandparent visitation is automatically vacated when the order for adoption is entered, unless the adopting parent is a stepparent ... of the child."). See also Syl. pt. 2, Petition of Nearhoof, 178 W.Va. 359, 359 S.E.2d 587 (1987) ("Upon the petition of a grandparent, pursuant to W. Va. Code, 48–2B–1 [1980], seeking visitation rights with a grandchild or grandchildren, who is the child or are the children of the grandparent's deceased child, a trial court may order that the grandparent shall have

---

3. See W. Va.Code § 48–10–402 (2001) (Repl.Vol. 2004) (permitting grandparent to petition for visitation with grandchild when no other domestic actions regarding the child are pending).

4. Because Warren, the person seeking to adopt Jon was his stepparent and married to Jon's biological mother, Melissa's assent thereto and joinder in the adoption petition was statutorily required. See W. Va.Code § 48–22–301(b)(3) (2001) (Repl.Vol.2004) ("Consent or relinquishment shall not be required of a parent or of any other person having custody of the adoptive child: .... Who, in a stepparent adoption, is the birth parent or adoptive parent of the child and is married to the petitioning adoptive parent. In such stepparent adoption, the parent must assent to the adoption by joining as a party to the petition for adoption.").

5. Among the information required to be contained within a petition for adoption is "[t]he name ... of the child, and the name by which the child shall be known" after the finalization of the adoption. W. Va.Code § 48–22–502(a)(1) (2001) (Repl.Vol.2004).

6. Pursuant to W. Va.Code § 48–22–601(a)(5) (2001) (Repl.Vol.2004), grandparents are required to be given notice of an adoption petition involving their grandchild when the grandchild's parent, who is the grandparents' child, is deceased:

   Unless notice has been waived, notice of a proceeding for adoption of a child must be served, within twenty days after a petition for adoption is filed, upon:

   ....

   A grandparent of the child if the grandparent's child is a deceased parent of the child and, before death, the deceased parent had not executed a consent or relinquishment or the deceased parent's parental relationship to the child had not been otherwise terminated.

The grandparents in this case were also entitled to notice of the adoption petition as parties who had in effect an order of visitation with the minor child sought to be adopted. See W. Va. Code § 48–22–601(a)(3) (providing that "notice of a proceeding for adoption of a child must be served" on "[a]ny person .. who has visitation rights with the child under an existing court order issued by a court in this or another state").

reasonable and seasonable visitation rights with the grandchild or grandchildren provided such visitation is in the best interest of the grandchild or grandchildren involved, even though the grandchild or grandchildren has or have been adopted by the spouse of the deceased child's former spouse."). Nevertheless, the circuit court noted the grandparents' objections.

In response to the grandparents' opposition to changing Jon C. L.'s surname, Warren and Melissa offered to retain the child's former surname as his middle name, *i.e.*, Jon L. A., or to hyphenate his last name to include both his former and proposed future surnames, *i.e.*, Jon C.L-A. During the course of the proceedings, Jon's guardian ad litem recommended that Warren be permitted to adopt Jon, but she did not specifically state whether Jon's surname should be changed.

Upon the evidence presented during the adoption hearing, the circuit court ultimately granted the petition for adoption but denied the request to change Jon's surname. As to these matters, the circuit court, by order entered September 24, 2004, ruled

> Accordingly, it is ADJUDGED, DECLARED and ORDERED that said child is *adopted by petitioner* WARREN L. A[.], and from this time forward, the rights, duties, privileges, and relationships between said child and the petitioner Warren L. A[.], shall be the same in all respects, including the right of inheritance, as if the child had been born to him and petitioner, Melissa A. A[.]
>
> . . . .
>
> The Court then considered the motion of the petitioner to change the child's name to JON C[.] A[.], or alternatively, to JON L[.] A[.] Considering the objection of the paternal grandparents, the Court FINDS that the proposed change of the child's name would not significantly advance his interests, and if the child wishes to change his name, he can do so as an adult. Therefore, it is ADJUDGED, DECLARED and ORDERED that from this time forward said child's name shall remain be [sic] **JON** C[.] A[.], to which ruling the petitioners did OBJECT.

From this ruling, Warren and Melissa now appeal to this Court.

## II.

## STANDARD OF REVIEW

■ The solitary issue presented for our consideration and determination in this case is whether the circuit court erred by denying the request of Warren and Melissa to change Jon's surname incident to his adoption by Warren. We previously have held that our review of a circuit court's order is varied:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997). *Accord* Syl. pt. 1, *State ex rel. Hechler v. Christian Action Network*, 201 W.Va. 71, 491 S.E.2d 618 (1997).

■ Moreover, where, as here, the question before the circuit court involves the interpretation of the applicable law and governing statutes, our review is plenary. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). *See also* Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review.").

Mindful of these standards, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

On appeal to this Court, the parties do not dispute the correctness of the order of adoption itself, but rather Warren and Melissa

assign error to that part of the circuit court's order which denied their request to change Jon's surname incident to his adoption by Warren. In support of their appeal, Warren and Melissa argue that the adoption statutes, themselves, give them the authority to change Jon's name in conjunction with his adoption by Warren and that the child's grandparents do not have the right to object thereto. By contrast, Robin and Janet contend that they were entitled to object to the proposed name change pursuant to those statutory provisions governing name changes, specifically W. Va.Code § 48–25–102 (2001) (Repl.Vol.2004).[7]

At the outset, we feel it is imperative to address another of the grandparents' objections, this one being that the petition for appeal in this case was not timely filed by Warren and Melissa. The final order of adoption was entered by the circuit court on September 24, 2004, and Warren and Melissa filed their petition for appeal with this Court on March 22, 2005, nearly six months after the entry of the circuit court's order. Robin and Janet contend that the petition for appeal was required to be filed within four months of the final order. In support of their position, the grandparents rely on W. Va.Code § 48–22–704(a) (2001) (Repl.Vol. 2004), which provides, in pertinent part, that "[a]n order or decree of adoption is a final order for purposes of appeal to the supreme court of appeals on the date when the order is entered," and Rule 3(a) of the West Virginia Rules of Appellate Procedure, which directs that "[n]o petition shall be presented for an appeal from . . . any . . . order, which shall have been entered more than four months before such petition is filed in the office of the clerk of the circuit court where the . . . order being appealed was entered."[8] In response to the grandparents' contentions,

Warren and Melissa assert that the correct appeal period in this case was six months, insofar as W. Va.Code § 48–22–704(b) allows up to six months to vacate an order of adoption: "[a]n order or decree of adoption may not be vacated, on any ground, if a petition to vacate the judgment is filed more than six months after the date the order is final."

We appreciate the perceived conflict between the finality dates of an adoption order as submitted by Warren and Melissa, however we also believe the language of W. Va. Code § 48–22–704(a) speaks for itself in rendering a final order of adoption appealable upon its entry. In any event, we are concerned that these technical difficulties in the filing of this petition for appeal might overshadow the more pressing concern, that being the final resolution of the name change issue of the little boy subject to these proceedings. Given the vast impact our decision of this case will have on this young man for years to come, and perhaps even for the rest of his life if he does not, as the circuit court has suggested he might, change his name upon his majority, we are reluctant to decline the invitation to address the merits of this case based upon the appeal's procedural posture. *See Zikos v. Clark,* 214 W.Va. 235, 241, 588 S.E.2d 400, 406 (2003) (per curiam) ("We decline to delay the resolution of these pivotal issues on technical procedural grounds, particularly because all necessary parties appear to be before the court."). *See also In re Erica C.,* 214 W.Va. 375, 380, 589 S.E.2d 517, 522 (2003) (per curiam) ("[A] mere procedural technicality does not take precedence over the best interests of the child[.]" (internal quotations and citation omitted)). Accordingly, because all necessary parties are currently present before the Court and due to

---

**7.** In the context of a proceeding to change a person's name, W. Va.Code § 48–25–102 (2001) (Repl.Vol.2004) permits "[a]ny person who is likely to be injured by the change of name of any person so petitioning, or who knows of any reason why the name change of any such petitioner should not be changed, may appear at the time and place named in the notice, and shall be heard in opposition to such change."

**8.** The grandparents further contend that the various exceptions which permit an extension of the

four-month appeal period do not apply to this case. *See* W. Va. R.App. P. 3(a) ("provid[ing], that the judge of the circuit court may for good cause shown, by order entered of record prior to the expiration of such period of four months, extend and re-extend such period, not to exceed a total extension of two months, if a request for the transcript was made by the party seeking an appeal . . . within thirty days of the entry of such . . . order").

the importance of this matter, we will exercise our authority to decide the matters presented by this appeal.

■ Turning now to the merits of the case before us, we recognize that adoptions in West Virginia, and elsewhere, are governed by statute. "The proceedings being wholly statutory, adoption may be effected only by compliance with the prescribed requirements of the law." *In re Adoption of Watson*, 45 Haw. 69, 73, 361 P.2d 1054, 1056 (1961). *Accord Sowers v. Tsamolias*, 23 Kan. App.2d 270, 273, 929 P.2d 188, 191 (1996) ("[T]he law of adoption is dependent on state statutory law." (citations omitted)), *aff'd on other grounds*, 262 Kan. 717, 941 P.2d 949 (1997); *Franklin v. White*, 263 Ala. 223, 225, 82 So.2d 247, 249 (1955) ("[T]he right of adoption is purely statutory." (internal quotations and citations omitted)). Given the statutory nature of adoption law, a review of the various canons of statutory construction will be instructive to our analysis.

■ When examining an issue requiring statutory construction, we first determine the expression of legislative intent evident in the subject statute. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). "Once the legislative intent underlying a particular statute has been ascertained, we proceed to consider the precise language thereof." *State ex rel. McGraw v. Combs Servs.*, 206 W.Va. 512, 518, 526 S.E.2d 34, 40 (1999). If the language employed by the Legislature in the given enactment is plain, we apply, rather than construe, such provision. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect" Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). *Accord DeVane v. Kennedy*, 205 W.Va. 519, 529, 519 S.E.2d 622, 632 (1999) ("Where the language of a statutory provision is plain, its terms should be applied as written and not construed." (citations omitted)).

A review of the adoption statutes,[9] codified at W. Va.Code § 48–22–101, *et seq.*, makes it abundantly clear that the Legislature not only intended to permit an adoptive parent to change a minor child's name incident to such adoption, but plainly anticipated such a result. The first reference to a child's new name upon adoption is in the statute setting forth the required elements for an adoption petition. W. Va.Code § 48–22–502(a)(1) (2001) (Repl.Vol.2004) directs that "[t]he petition shall be verified and set forth: ... [t]he name ... of the child, and the name by which the child shall be known." *See also* W. Va.Code § 48–22–902(a)(2–3) (2003) (Repl. Vol.2004) (directing that, in the case of the adoption of a child who "has immigrated to the United States," "[t]he verified petition shall set forth the following: .... [t]he name of the child adopted in a foreign country [and] ... [t]he name by which the child shall be known henceforth"). Therefore, when a prospective adoptive parent initially makes his/her application to adopt a child, the adoptive parent may specify what the child's new name will be after the adoption.

---

9. Although the grandparents and, to some degree, the circuit court rely upon the statutes governing name changes, W. Va.Code § 48–25–101, *et seq.*, as authority to permit the grandparents to object to the requested change of Jon's surname and the circuit court's decision to defer to such objection, we do not agree that these statutes are dispositive of, or even applicable to, the instant proceeding. The context in which this case arose in the circuit court and the manner in which it is presented for our consideration on appeal is in the nature of an adoption proceeding, not a name change proceeding. Warren's and Melissa's request to change Jon's surname was not a separate proceeding filed under the name change statutes but rather was incident to Warren's petition to adopt Jon. Insofar as the adoption statutes specifically pertain to and govern the instant proceeding, we find them to be determinative of the issues herein rather than the more general statutes relating solely to petitions to change a person's name. *See* Syl. pt. 1, *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984) ("The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled."). *Accord Daily Gazette Co., Inc. v. Caryl*, 181 W.Va. 42, 45, 380 S.E.2d 209, 212 (1989) ("The rules of statutory construction require that a specific statute will control over a general statute[.]" (citations omitted)).

Thereafter, W. Va.Code § 48–22–701 (2001) (Repl.Vol.2004), which governs the adoption proceedings, themselves, references the change of a child's name during the course of his/her adoption. Specifically, W. Va.Code § 48–22–701(d) explains the procedure to be followed by a court conducting a final adoption hearing, and, upon a finding by the court that the adoption should be permitted, the court "shall make an order reciting the facts proved and the name by which the child shall thereafter be known," as well as the new relationships resulting from the adoption, itself. *See also* W. Va.Code § 48–22–903 (2003) (Repl.Vol.2004) (mandating that, in proceedings recognizing a foreign adoption decree and upon the requisite findings, the court "shall enter an order of adoption," and "[t]he order shall . . . set forth the name by which the child shall be known henceforth"). Thus, as part of the final order of adoption, the Legislature has recognized a change in the child's name resulting from the adoption proceedings.

Finally, upon the conclusion of the adoption proceedings, documents reflecting the child's new adoptive name are required to be filed with the state registrar of vital statistics.

> Immediately upon the entry of such order of adoption, the court shall direct the clerk thereof forthwith to make and deliver to the state registrar of vital statistics a certificate under the seal of said court, showing:
>
> . . . .
>
> . . . The name by which said child has previously been known; [and]
>
> . . . .
>
> . . . The name by which the child is to be thereafter known[.]

W. Va.Code § 48–22–702(d)(3,5) (2001) (Repl.Vol.2004). Following this recording, a new birth certificate is required to be issued for the child.

> Upon receipt of the certificate, the registrar of vital statistics shall forthwith issue and deliver by mail to the adopting parents at their last-known address and to the clerk of the county commission of the county wherein such order of adoption was entered a birth certificate in the form prescribed by law, *except that the name of the child shown in said certificate shall be the name given him or her by the order of adoption.*

W. Va.Code § 48–22–702(e) (emphasis added). Hence, it is evident that the change of a child's name incident to his/her adoption is not only permitted by the Legislature but is anticipated thereby as the child's new adoptive name is the name required to be listed on the child's birth certificate that is issued upon the finalization of the adoption.

With each of these referenced statutes, it is important to note that no discretion is afforded to the circuit court to either accept or reject the requested name change;[10] rather, the statutes treat the change of name of an adopted child as a matter of course incident to the adoption proceeding, itself. Neither are those persons entitled to notice, such as the grandparents herein, entitled to object to a proposed change of name during an adoption proceeding.[11]

---

10. By contrast, the name change statutes repose discretion in the circuit court to enter an order granting or refusing the petition for change of name. *See* W. Va.Code § 48–25–103 (2001) (Repl.Vol.2004) (directing that "the court or judge thereof in vacation *may* order a change of name as applied for" (emphasis added)). *See also Lufft v. Lufft*, 188 W.Va. 339, 424 S.E.2d 266 (1992) (establishing guidelines for court to follow when presented with a change of name request for a minor child under the name change statutes); *In re Petition of Harris*, 160 W.Va. 422, 236 S.E.2d 426 (1977) (same).

11. In fact, we are rather taken aback by the circuit court's order denying the requested name change insofar as that ruling arose out of defer-

ence to the grandparents' wishes vis-a-vis the child's name in this case. What we find most troubling about this scenario is the fact that the grandparents' preference was permitted to trump that of the biological mother whose assent to the adoption petition was required, who was a party to the adoption proceedings, and whose parental rights in and to her minor child had not been, and have not been, terminated. We repeatedly have recognized, as has the United States Supreme Court, that, absent a showing of unfitness, a parent is entitled to the care, custody, and control of his/her minor child and that such rights prevail over the interests of all other interested parties, including those of the child's grandparents. *See, e.g., In re Clifford K.*, 217 W.Va. at 657, 619 S.E.2d at 160 (finding that rights of child's grandparents were "not on par

Despite this absence of discretion or ability to formally object to a child's name change during an adoption proceeding, we do not think such ability to change a child's name is necessarily absolute. Rather, under the unique circumstances of the case *sub judice*, because a stepparent adoption was involved, the child's parent had to assent to the child's adoption by her spouse. *See* W. Va.Code § 48–22–301(b)(3). Likewise, given the priority given to a fit parent vis-a-vis the care, control, and custody of his/her child, we find it necessary for a parent, whose spouse seeks to adopt the parent's child, to assent to the proposed name change. *See* Syl. pt. 1, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973) ("In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions."). Any other result would elevate the rights and interests of a potential adoptive parent above those of the child's actual, and in this case biological, parent, which is clearly contraindicated by the law of this State.

Moreover, the statutes according permission to an adoptive parent to change a child's name in connection with his/her adoption of the child is consistent with the long-standing law of this State recognizing the ultimate effect of an adoption proceeding: a termination of previous familial relationships and the creation of new familial relationships, protected by the umbrella of finality. In this regard, the Legislature has specifically stated that

[u]pon the entry of such order of adoption, any person previously entitled to parental rights, any parent or parents by any previous legal adoption, and the lineal or collateral kindred of any such person, parent or parents, except any such person or parent who is the husband or wife of the petitioner for adoption, shall be divested of all legal rights, including the right of inheritance from or through the adopted child under the statutes of descent and distribution of this state, and shall be divested of all obligations in respect to the said adopted child, and the said adopted child shall be free from all legal obligations, including obedience and maintenance, in respect to any such person, parent or parents. From and after the entry of such order of adoption, the adopted child shall be, to all intents and for all purposes, the legitimate issue of the person or persons so adopting him or her and shall be entitled to all the rights and privileges and subject to all the obligations of a natural child of such adopting parent or parents.

W. Va.Code § 48–22–703(a) (2001) (Repl.Vol. 2004). This provision has been construed as signifying that "the entry of a final order of adoption effectively changes the legal and familial relationships of the parties thereto by divesting the pre-adoption lineages and obligations and replacing them with ties indicative of the post-adoption state of affairs." *State ex rel. Brandon L. v. Moats*, 209 W.Va. 752, 770, 551 S.E.2d 674, 692 (2001) (Davis, J., dissenting). Additionally, "the central aim of adoption is finality, finality in the severance of pre-existing relationships and finality in the creation of new adoptive relationships, which breeds certainty for adopted children and their adoptive parents, alike, in their new adoptive relationship." *In re*

with" those of child's psychological parent and primary caretaker); *Rozas v. Rozas*, 176 W.Va. 235, 238, 342 S.E.2d 201, 205 (1986) ("Absent a showing that a natural parent is unfit, a natural parent's right to custody outstrips that of a grandparent." (citations omitted)); *Leach v. Bright*, 165 W.Va. 636, 638, 270 S.E.2d 793, 794 (1980) (per curiam) ("The law in this jurisdiction has long been that the fit natural parent's right to custody of his or her child is paramount to that of any third party, including a grandparent." (citation omitted)). *See also Troxel v. Granville*,

530 U.S. 57, 72, 120 S.Ct. 2054, 2063, 147 L.Ed.2d 49, 60 (2000) (concluding that rights of grandparents cannot be permitted to unconstitutionally infringe upon a parent's "fundamental right to make decisions concerning the care, custody, and control" of his/her child). Thus, absent express statutory authority granting those persons entitled to notice of an adoption proceeding the power to object thereto, the circuit court improperly accorded weight to the grandparents' preference in refusing to change Jon's surname.

*Grandparent Visitation of Cathy L. (R.) M. v. Mark Brent R.*, 217 W.Va. 319, 328, 617 S.E.2d 866, 875 (2005) (per curiam) (Davis, J., concurring) (citation omitted). *See also State ex rel. Smith v. Abbot*, 187 W.Va. 261, 266, 418 S.E.2d 575, 580 (1992) ("Finality is of the utmost importance in an adoption.").

Accordingly, we hold that an adoptive parent may, incident to an adoption proceeding, change his/her adopted child's name to reflect the new adoptive relationship.[12] However, in the case of a stepparent adoption where the adoptive parent is married to the child's parent, the child's parent must assent to the proposed name change. In this case, not only did Warren seek to change Jon's name in his adoption petition to reflect the parties' new adoptive relationship, but Melissa assented to, and vigorously supported, such a name change. Thus, to the extent that the circuit court denied the change of Jon's surname as requested by Warren and Melissa in Warren's petition to adopt Jon, we find the circuit court erred and reverse that ruling. We further remand this case to the Circuit Court of Roane County for further proceedings consistent with this opinion, including entry of an order changing Jon's surname as requested by Warren and Melissa incident to Warren's adoption of the child.

## IV.

## CONCLUSION

For the foregoing reasons, the September 24, 2004, order of the Circuit Court of Roane County is hereby reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

STARCHER, J., concurring.

In the instant case, the majority opinion crafted a "bright-line" rule: in an adoption proceeding, the adoptive parent has exclusive authority to change the adopted child's name. In the case of a step-parent adoption, where the adoptive step-parent is married to the child's parent, nobody except the child's parent has any right to interpose a legal objection to changing the child's name. The majority opinion concluded that discretion accorded to circuit courts under the name change statutes, *W.Va.Code*, 48–25–101 to –107, has no place in the context of an adoption proceeding under *W.Va.Code*, 48–22–101 to –903.

But bright lines are not always the best solution in grey areas. I am troubled by the majority opinion's interpretation of our adoption statutes, because I can easily conceive of grey areas where a name change might be patently unfair—particularly to the child. I believe the Legislature should modify the adoption statutes to allow for some flexibility and some consideration of what is in the best interests of the child. Perhaps the adoption proceeding statutes should be modified to accord courts some discretion to also consider the objections of the child or of third parties who allege they will be affected by a change in the adopted child's name.

The majority's interpretation of the adoption statutes works fine in clear, tidy situations like that in the instant case: the father died while the child was an infant (the day before the child's second birthday), and the mother remarried and changed her surname. The stepfather wants to adopt the child as his own, and the mother and stepfather want to change the infant's surname. The adoption case has dragged on, but child is still young and in pre-school, and the parents probably want to protect the child from being peppered with embarrassing questions by his classmates about why his last name is different from his parents'. There is no clear reason why the child's last name cannot be changed.

---

12. This holding is consistent with the decisions of other states permitting adoptive parents to change their adopted child's name as a matter of course during adoption proceedings. *See, e.g., In re Adoption of Watson*, 45 Haw. 69, 361 P.2d 1054 (1961); *Coffey v. Department of Soc. Servs. of Baltimore City*, 41 Md.App. 340, 397 A.2d 233 (Md.Ct.Spec.App.1979); *Smith v. Benson*, 542 S.W.2d 571 (Mo.Ct.App.1976); *Frasier v. McClair*, 282 S.C. 491, 319 S.E.2d 350 (Ct.App. 1984). *But see Sowers v. Tsamolias*, 23 Kan. App.2d 270, 929 P.2d 188 (1996) (vesting court with discretion to permit or deny requested name change in adoption proceeding), *aff'd on other grounds*, 262 Kan. 717, 941 P.2d 949 (1997).

But what if the facts were different? What if this child were originally named "Jon D. Smith, IV," in honor of his great-grandfather who was a well-known oil magnate, billionaire and philanthropist? Would it be fair to deprive the child of his historical lineage?

What if the child had routinely gone fishing or camping with the great-grandfather and grandfather who shared the child's name? Would it be fair to the child to change the child's name, to artificially try and distance the child from his memories?

What if the child was a teenager at the time of the adoption? Under our divorce and infant guardian statutes, we let a child who is fourteen years of age or older choose who they want to live with (save circumstances where the choice would be manifestly harmful to the child).[1] If the child in this case was fourteen, and his parents had simply divorced, the child could normally pick with which parent he wanted to live. But applying the majority's interpretation of the adoption statutes, if the fourteen-year-old child's father died, his mother remarried, and the new stepfather wanted to adopt the fourteen-year-old child, the child could not object to his mother and stepfather changing his name, and would have no say in what that name might be.

Taking this reasoning a step further, what if the mother in this case was a "serial bride" who jumped from marriage to marriage? Applying the majority's reasoning, the mother could divorce and remarry every few years, and each time get her new husband to adopt the child and change the child's name. A child could conceivably grow to adulthood and have had a dozen or more name changes.

My point is this: in some instances, it simply may not be in the child's best interests to change the child's name. Simply

saying that the child can change his or her name upon reaching majority is not an acceptable alternative. The statutory scheme created by the Legislature is, as the majority opinion found, clear and painfully oblivious to the wants and needs of the child, and the wants and needs of other individuals like the child's grandparents. I therefore suggest the Legislature examine the adoption statutes, and consider some flexible, ameliorating language such that the best interests of the child are considered and protected.

I respectfully concur in the majority's opinion, but add my thoughts hoping that the Legislature might look at this issue.

I am authorized to state that Chief Justice Albright joins in this opinion.

---

1. *W.Va.Code*, 48–9–206(a)(2) [2001] states:

   Unless otherwise resolved by agreement of the parents . . . or unless manifestly harmful to the child, the court shall allocate custodial responsibility . . . necessary achieve any of the following objectives: . . .

   (2) To accommodate the firm and reasonable preferences of a child who is fourteen years of age or older, and with regard to a child under fourteen years of age, but sufficiently matured that he or she can intelligently express a volun-

tary preference for one parent, to give that preference such weight as circumstances warrant[.]

Similarly, the infant guardian statutes, specifically *W.Va.Code*, 44–10–4(a) [1923], state:

   If the minor is above the age of fourteen years, he or she may in the presence of the circuit or family court, or in writing acknowledged before any officer authorized to take the acknowledgment of a deed, nominate his or her own guardian[.]