IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED

**December 6, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**XERXES R.,**
**Respondent Below, Petitioner**

**v.) No. 24-ICA-76**      (Cir. Ct. Putnam Cnty. Case No. FC-40-2023-D-97)

**RICHARD and NANCY P.,**
**Petitioners Below, Respondents**

## MEMORANDUM DECISION

Petitioner Xerxes R.[1] appeals the Circuit Court of Putnam County's February 2, 2024, Final Order Granting Petition for Grandparent Visitation and Denying Motion to Dismiss. Respondents Richard P. and Nancy P. and the guardian ad litem ("GAL") responded in support of the circuit court's decision.[2] Xerxes R. filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioners Richard P. and Nancy P. ("Grandparents") are the maternal grandparents of two minor children, Z. R., born in 2013, and S. R., born in 2016. Respondent Xerxes R. ("Father") is the biological father of the children and is employed as a law enforcement officer in Putnam County, West Virginia. The biological mother, Jessie R. ("Mother") died of a drug overdose in March of 2023. Mother and Father were divorced at the time of Mother's death. The children were previously the subjects of abuse and neglect proceedings and resided with Father during the pendency of those proceedings, which were conducted by a Judge from the Circuit Court of Cabell County, sitting by special assignment in the Circuit Court of Putnam County, due to Father being a police officer in

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Xerxes R. is represented by Joseph W. Hunter, Esq. Richard P. and Nancy P. are represented by Rosalee Juba-Plumley, Esq. The GAL is Maggie Kuhl, Esq.

Putnam County. The abuse and neglect case was dismissed upon Mother's death and the final order of dismissal was entered on April 11, 2023.

After Mother's death, animosity grew between Father and Grandparents. As a result, Father stopped allowing the children to visit Grandparents. On May 1, 2023, Grandparents filed a petition for grandparent visitation in the Family Court of Putnam County. The petition was transferred to the Circuit Court of Putnam County. In their petition, Grandparents sought some weekend time, holiday dinners, two weeks during summer, the opportunity to take the children to dinner weekly, the ability to attend the children's school functions, and FaceTime or phone calls with the children once daily. On May 16, 2023, Father filed a motion to dismiss the petition for grandparent visitation. On August 7, 2023, the court appointed a GAL for the children. The appointed GAL also served as such in the prior abuse and neglect and divorce proceedings.

On August 21, 2023, Father filed a motion for disqualification of the Cabell County Circuit Court Judge presiding over this matter by special assignment, alleging that the judge's court reporter enjoyed a close relationship with Grandparents, including going on vacations with them. In that motion, Father also requested the appointment of a new GAL on the basis that he believed that the GAL failed to ensure that Mother was drug-tested and he planned to bring a civil action that included the GAL as one of the defendants. The circuit court refused Father's request to appoint a new GAL. By administrative order entered on August 28, 2023, the Supreme Court of Appeals of West Virginia ("SCAWV") denied Father's motion to disqualify the presiding judge.

The final hearing was held on November 7, 2023. At that hearing, the circuit court heard testimony from the GAL and Dr. Timothy Saar of Saar Psychological Group, who was qualified as an expert. Dr. Saar testified that grandparent visitation would be in the children's best interest and would aid in preserving their memory of Mother. Dr. Saar also opined that Grandparents were not focused on the negativity between them and Father and that the children would receive long term benefits from having a relationship with them.

Also, during the final hearing on November 7, 2023, Grandmother testified that Grandparents had been involved with the children since their birth and saw them approximately three times per week, often overnight. She further testified that Father stopped allowing them visitation after Mother's death, would not allow the children to attend Mother's funeral, and required Grandparents to watch the children's activities from afar.

Father testified that, after Mother died, he allowed Grandparents to visit sporadically. He further testified that he did not allow the children to attend Mother's

funeral because he is Greek and open casket funerals are not practiced in his culture, and he thought it would be too much for the children. Father also asserted at the final hearing that Grandparents were attempting to phase him out of the children's lives. When asked how much time Grandparents should be allotted for visitation, Father testified that they should only be permitted to attend sporting events, birthday parties, and Grandparents' Day at school.

The GAL testified that she had met with the children on multiple occasions and that they consistently reported a close bond with Grandparents. The children also reported to her that Grandparents attended their sporting events, watched them after school, took them to medical appointments, and spent holiday time with them. The GAL opined that Grandparents did not deliberately enable Mother in her addiction and always seemed protective over the children. She further stated that Grandparents' honesty aided in her investigation of Mother's drug use and that Father had been difficult to work with during the abuse and neglect proceedings and sought to cut Mother completely out of the children's lives. Lastly, the GAL testified that she had no concerns that Grandparents would undermine Father's parenting because they had not done so previously. Accordingly, the GAL recommended that regular visitation with Grandparents would be in the children's best interest.

The circuit court entered its Final Order Granting Petition for Grandparent Visitation and Denying Motion to Dismiss on February 2, 2024. Grandparents were granted the following visitation: (1) one weekend per month from Friday after school until Saturday evening during the school year; (2) during summer break, every Wednesday from 8:00-4:30 in addition to the one weekend per month; and (3) one evening per week from 4:00-6:30 during birthdays and major holiday weeks. Additionally, the circuit court ordered that Grandparents would be permitted to attend all of the children's school and sporting events and would be permitted to contact them via FaceTime or telephone once each weeknight. It is from the circuit court's February 2, 2024, order that Father now appeals.

For these matters, we apply the following standard of review:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 2, *Walker v. W. Va. Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997); Syl. Pt. 1, *In re the Adoption of Jon L.*, 218 W. Va. 489, 625 S.E.2d 251 (2005). Further,

"[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 2, *In re Visitation of A.P.*, 231 W. Va. 38, 743 S.E.2d 346 (2013) (per curiam) (citation omitted).

On appeal, Father raises four assignments of error. First, he asserts that the circuit court lacked jurisdiction to hear this case pursuant to Rule 6 of the Rules of Procedure for Child Abuse and Neglect Proceedings.[3] We disagree. For jurisdiction of this case to lie solely with the family court, Rule 6 requires either a dismissal of the abuse and neglect case for failure to state a claim, or a dismissal followed by the child being placed back in the physical and legal custody of two cohabitating parents. Then, if a custody, visitation or child support proceeding occurs between *the parents*, such action may be brought in family court. The unfortunate circumstances of this case met neither of those requirements. Here, the case was dismissed due to Mother's passing and the children were returned only to Father. In addition to the requirements of Rule 6 not being met, multiple West Virginia Code sections grant both the circuit court and the family court jurisdiction over grandparent visitation cases.[4] *See also In re J.P.*, No. 18-0171, 2018 WL 6040185, at *2-3 (W. Va. Nov.

---

[3] Rule 6 states the following:

Each child abuse and neglect proceeding shall be maintained on the circuit court's docket until permanent placement of the child has been achieved. The court retains exclusive jurisdiction over placement of the child while the case is pending, as well as over any subsequent requests for modification, including, but not limited to, changes in permanent placement or visitation, except that (1) if the petition is dismissed for failure to state a claim under Chapter 49 of the W. Va. Code, or (2) if the petition is dismissed, and the child is thereby ordered placed in the legal and physical custody of both of his/her cohabitating parents without any visitation or child support provisions, then any future child custody, visitation, and/or child support proceedings between the parents *may* be brought in family court. However, should allegations of child abuse and/or neglect arise in the family court proceedings, then the matter shall proceed in compliance with Rule 3a. (emphasis added).

[4] See West Virginia Code § 48-10-101 (2006), which states,

[t]he Legislature finds that circumstances arise where it is appropriate for circuit courts or family courts of this state to order that grandparents of minor children may exercise visitation with their grandchildren. The Legislature further finds that in such situations, as in all situations involving children, the best interests of the child or children are the paramount consideration.

19, 2018) (memorandum decision) (recognizing that the circuit court had jurisdiction over grandparent visitation under Rule 6 where father had custody of the child, mother's parental rights had been terminated, and abuse and neglect petition had been dismissed).

In his second assignment of error, Father contends that the circuit court violated his constitutional substantive due process rights by granting extensive grandparent visitation where he, as a fit parent, held a reasonable belief that said visitation would impair his constitutional right to rear his children. We disagree. When weighing a petition for grandparent visitation, a court must consider the thirteen factors outlined in The Grandparent Visitation Act, which is codified in West Virginia Code § 48-10-502 (2001).[5]

---

See also West Virginia Code § 48-10-301 (2006), stating "[a] grandparent of a child residing in this state may, by motion or petition, make application to the circuit or family court of the county in which that child resides for an order granting visitation with his or her grandchild."

[5] The thirteen factors include:

(1) The age of the child;
(2) The relationship between the child and the grandparent;
(3) The relationship between each of the child's parents or the person with whom the child is residing and the grandparent;
(4) The time which has elapsed since the child last had contact with the grandparent;
(5) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;
(6) If the parents are divorced or separated, the custody and visitation arrangement which exists between the parents with regard to the child;
(7) The time available to the child and his or her parents, giving consideration to such matters as each parent's employment schedule, the child's schedule for home, school and community activities, and the child's and parents' holiday and vacation schedule;
(8) The good faith of the grandparent in filing the motion or petition;
(9) Any history of physical, emotional, or sexual abuse or neglect being performed, procured, assisted or condoned by the grandparent;
(10) Whether the child has, in the past, resided with the grandparent for a significant period or periods of time, with or without the child's parent or parents;
(11) Whether the grandparent has, in the past, been a significant caretaker for the child, regardless of whether the child resided inside or outside of the grandparent's residence;

Upon consideration of these factors, the "family court shall grant reasonable visitation to a grandparent upon a finding that visitation would be in the best interests of the child and would not substantially interfere with the parent-child relationship." W. Va. Code § 48-10-501 (2006). As part of its analysis, the court is required to give extra weight to a fit parent's preference regarding grandparent visitation.[6] Here, the circuit court thoroughly analyzed the grandparent visitation factors, Dr. Saar's expert recommendation, the GAL's recommendation, and Father's preferences in determining the children's best interest. Other than Father's preference against visitation, all remaining evidence and professional recommendations pointed toward grandparent visitation being in the children's best interest. Therefore, we conclude that the circuit court's ruling on this assignment of error was appropriate and reflects the best interest of the children.

Third, Father argues that the circuit court erred in appointing a GAL who had a conflict because he planned to bring a civil suit naming the GAL as one of the defendants. This argument lacks merit. West Virginia Code § 48-10-403 (2001) states, "[w]hen a motion is filed seeking grandparent visitation, the court, on its own motion or upon the motion of a party or grandparent, may appoint a guardian ad litem for the child to assist the court in determining the best interests of the child regarding grandparent visitation." Here, the court not only had the discretion to appoint the GAL, but the GAL it chose was reasonable, as she had previously served in the abuse and neglect case and was familiar with both the background and the children. Therefore, we cannot find that the circuit court abused its discretion by appointing the GAL who was familiar with this case's history.

Lastly, Father asserts as his fourth assignment of error that the circuit court judge erred by not voluntarily recusing himself when the official court reporter allegedly had a close relationship with the Grandparents thereby creating an appearance of impropriety. We decline to address this assignment of error, as it has already been ruled upon when Father's motion to disqualify the circuit court judge was denied by the SCAWV in an administrative order entered on August 28, 2023. The SCAWV has recognized that "[t]he matter of judicial recusal and disqualification is a matter of discretion reposed solely in the presiding judge and the Chief Justice of this Court." *Patton v. Cnty. of Berkeley*, 242 W.

---

(12)    The preference of the parents with regard to the requested visitation, and

(13)    Any other factor relevant to the best interests of the child.

[6] *See In re Visitation of A.P.*, 231 W. Va. 38, 42, 743 S.E.2d 346, 350 (2013) (per curiam) (recognizing "if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination.") (quoting *Troxel v. Granville*, 530 U.S. 57, 70, 120 S. Ct. 2054, 2062 (2000)). The SCAWV has held that "those provisions [of West Virginia Code § 48-10-502] contemplate the special weight that is constitutionally afforded a fit parent's wishes in its twelfth factor." *In re Visitation of L.M.*, 245 W. Va. 328, 337, 859 S.E.2d 271, 280 (2021).

Va. 315, 319, 835 S.E.2d 559, 563 (2019) (quoting *State ex rel. Pritt v. Vickers*, 214 W. Va. 221, 222 n.1, 588 S.E.2d 210, 211 n.1 (2003).

To the extent that Father's arguments below raise the issue of bias on the part of the circuit court judge, after our review of the record, we find no evidence of bias, no prejudice to Father, and no depravation of Father's due process rights. While Father may not agree with the credibility determinations made by the court below, the same is not tantamount to bias. Father's simple disagreement with the court's weighing of the evidence does not entitle him to relief. *See State v. Guthrie*, 194 W. Va. 657, 699 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact.").

In order to prevail on a claim of bias, at a minimum, Father must substantiate his claim of bias or prejudice. *See generally Kevin D. v. Alexandria D.*, No. 23-15, 2024 WL 2946662, (W. Va. June 10, 2024) (memorandum decision). Here, the record contains ample evidence to support the circuit court's rulings and does not establish that Father's due process rights were infringed in any manner. Father actively participated in the hearings held in this matter, was able to offer witness testimony and make arguments supporting his position, and was provided the opportunity to cross-examine witnesses. Accordingly, we find that the Father has failed to demonstrate error on the basis of bias, prejudice, or a violation of his due process rights. Thus, we find no error or abuse of discretion in the circuit court's denial of Father's motion to dismiss Grandparents' petition for visitation.

Accordingly, we affirm the circuit court's February 2, 2024, final order granting the petition for grandparent visitation.

Affirmed.


**ISSUED:** December 6, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear